1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TRACY K ROBINSON,                         No. 2:14-cv-0051-KJN

12                   Plaintiff,

13          v.                                  ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                     Defendant.
16

17          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18   ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI")

19   under Title XVI of the Social Security Act ("Act").[1]  In her motion for summary judgment,

20   plaintiff principally contends that the Commissioner erred by finding that plaintiff was not

21   disabled from October 29, 2010, the date plaintiff's application was filed, through the date of the

22   final administrative decision.  (ECF No. 16.)  The Commissioner filed an opposition to plaintiff's

23   motion and a cross-motion for summary judgment.  (ECF No. 19.)  Plaintiff did not file a reply.

24          For the reasons that follow, the court denies plaintiff's motion for summary judgment,

25   grants the Commissioner's cross-motion for summary judgment, and enters judgment for the

26

27   _____
     [1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and
28   both parties voluntarily consented to proceed before a United States Magistrate Judge for all
     purposes.  (ECF Nos. 7, 9.)

                                                    1

1   Commissioner.

2          I.          BACKGROUND

3          Plaintiff was born on April 24, 1989, attended school until the eleventh grade, was

4   enrolled in special education classes during her time in school, and previously worked as a ticket

5   counter, pizza maker, and stock clerk.[2]  (Administrative Transcript ("AT") 20, 35-36, 38, 41 121.)

6   On October 29, 2010, plaintiff applied for SSI, alleging that she was unable to work as of

7   September 1, 2009.  (AT 11, 121-130.)  On April 15, 2011, the Commissioner determined that

8   plaintiff was not disabled.  (AT 11, 64-66.)  Upon plaintiff's request for reconsideration, the

9   determination was affirmed on June 24, 2011.  (AT 11, 70-74.)  Thereafter, plaintiff requested a

10  hearing before an administrative law judge ("ALJ"), which took place on May 8, 2012, and at

11  which plaintiff (represented by counsel) and a vocational expert testified.  (AT 11, 27-61.)

12         In a decision dated May 23, 2012, the ALJ determined that plaintiff had not been under a

13  disability, as defined in the Act, from October 29, 2010, the date plaintiff filed her application,

14  through the date of the ALJ's decision.  (AT 8-26.)  The ALJ's decision became the final decision

15  of the Commissioner when the Appeals Council denied plaintiff's request for review on

16  November 13, 2013.  (AT 1-6.)  Thereafter, plaintiff filed this action in federal district court on

17  January 9, 2014, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

18  II.       ISSUES PRESENTED

19         Plaintiff raises the sole issue of whether the ALJ erred in finding that plaintiff's mental

20  impairment did not meet the criteria set forth in Listing 12.05(C) of 20 C.F.R. Part 404, Subpart

21  P, Appendix 1.

22   III.      LEGAL STANDARD

23         The court reviews the Commissioner's decision to determine whether (1) it is based on

24  proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

25  as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

26  _____
    [2] Because the parties are familiar with the factual background of this case, including plaintiff's
27  medical and mental health history, the court does not exhaustively relate those facts in this order.
    The facts related to plaintiff's impairments and treatment will be addressed insofar as they are
28  relevant to the issues presented by the parties' respective motions.

evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th

Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  "The ALJ is

responsible for determining credibility, resolving conflicts in medical testimony, and resolving

ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The

court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational

interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.    DISCUSSION

    A.    Summary of the ALJ's Findings

    The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard

five-step analytical framework.[3]  At Step One, the ALJ concluded that plaintiff had not engaged

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

in substantial gainful activity since October 29, 2010, the date plaintiff filed her application.  (AT 13.)  At Step Two, the ALJ determined that plaintiff had the severe impairment of "borderline intellectual functioning."  (Id. (citations omitted).)  However, at Step Three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 14.)  In particular, the ALJ considered plaintiff's impairments under the criteria of Listing 12.02 and Listing 12.05 and determined that she did not meet either Listing.  (AT 14-15.)

Before proceeding to Step Four, the ALJ assessed plaintiff's residual functional capacity ("RFC") for the relevant time period as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple as defined in the Dictionary of Occupational Titles as SVP levels 1 and 2, routine and repetitive tasks; she should have only occasional decision-making required and only occasional changes in the work setting; she should not have strict production quotas, with an emphasis on a per shift rather than per hour basis; and she can have only occasional interaction with the general public, coworkers, and supervisors.

(AT 15.)

At Step Four, the ALJ found that plaintiff was unable to perform any past relevant work.  (AT 20.)  Finally, at Step Five, the ALJ, based on the VE's testimony, determined that considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed, specifically, laundry worker, housekeeper, and table worker/sorter.  (AT 21, 56-57.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability as defined in the Act from October 29, 2010, through the date of the ALJ's decision.  (AT 22.)

////

////

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4

B.     Plaintiff's Substantive Challenges to the Commissioner's Determinations

   1.     *Whether the ALJ Erred in Finding that Plaintiff's Mental Impairment Did Not Meet Listing 12.05(C)*

Plaintiff's sole argument is that the ALJ erred at Step Three when he found that plaintiff did not meet or equal the criteria set forth in Listing 12.05(C) of 20 C.F.R. part 404, subpart P, appendix 1.

At Step Three, the ALJ determines whether "a claimant's impairment meets or equals an impairment listed in [20 C.F.R. part 404, subpart P, appendix 1]." Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). The Listing of Impairments describes specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." Id. (citing 20 C.F.R. § 404.1525). If a claimant meets or equals a listed impairment he or she will be found disabled at this step without further inquiry. Tackett, 180 F.3d at 1099 (citing 20 C.F.R. § 404.1520(d)).

A claimant bears the burden of proving that his or her impairments satisfy all the criteria of a particular listing. Tackett, 180 F.3d at 1099 ("[Claimant] had to establish that he [or she] met or equaled each of the following characteristics of a listing."). "For a claimant to show that his [or her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original).

In the present case, the ALJ concluded at Step Three that plaintiff "does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AT 14.) In particular, the ALJ considered plaintiff's mental impairment in light of the criteria set out in listings 12.02 and 12.05 and determined that plaintiff's impairment did not meet or medically equal the criteria of either of those listings. (AT 14-15.) Plaintiff argues that the ALJ erred in his conclusion that plaintiff's mental impairment did not meet or equal the criteria set out in Listing 12.05(C). (ECF No. 16 at 10-15.)

In order to show that plaintiff's mental impairments met listing-level severity under Listing 12.05 (intellectual disability), plaintiff must show that she suffers from "significantly

5

subaverage general intellectual functioning with deficits in adaptive functioning" and that the evidence shows that the onset of this impairment occurred prior to age 22.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.  Plaintiff may be able to show the required level of severity for purposes of Listing 12.05 by showing that the requirements set out in Paragraphs A, B, C, or D are satisfied and that the onset of her impairment occurred prior to age 22.  (Id.)  Here, plaintiff argues that the evidence shows that she satisfied the criteria set out in Paragraph C of Listing 12.05.  (ECF No. 16 at 10.)

Listing 12.05(C) states that a claimant can show that her impairment meets listing-level severity when the evidence demonstrates the following:  "A valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05 (emphasis added).  The Listing continues:  "[f]or paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c).  If the additional impairment(s) does not cause limitations that are 'severe' as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes 'an additional and significant work-related limitation of function,' even if you are unable to do your past work because of the unique features of that work."  Id.  "Thus, Listing 12.05(C ) has three main components:  (1) sub-average intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation."  Kennedy v. Colvin, 738 F.3d 1172, 1176 (9th Cir. 2013).  If a claimant can meet all three requirements, she will be found disabled under Listing 12.05(C).

Here, the ALJ stated the following in determining that plaintiff's impairments did not meet the requirements of Listing 12.05(C):

> Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.  The claimant has a full-scale IQ

score of 61.  However, the claimant does not have any other severe impairment.
While there is prior evidence of a learning disability, there is no evidence that this
is an active medically determined impairment.  The claimant has also been
diagnosed with dysthymic disorder, but this was classified as mild and the
claimant has not received any treatment for any mood disorder.  As noted, it is
non-severe.

(AT 15 (citations omitted).)

Plaintiff asserts that she satisfied the IQ score requirement of Paragraph C because Dr.
Wakefield, an examining state agency psychologist, found that plaintiff had a valid full scale IQ
score of 61 based on WAIS-IV test results.  (AT 245.)  This score was squarely within the
required range for Listing 12.05(C).  The ALJ did not dismiss this score as invalid or exclude it
from the substantial weight he assigned to Dr. Wakefield's opinion.  The record does not contain
any test results or other evidence to the contrary and defendant does not argue that the IQ test
score was not valid.  Accordingly, plaintiff's IQ score fell within the range required to meet
Listing 12.05(C).

Next, plaintiff must demonstrate that her mental impairment manifested itself prior to age
22.  While Dr. Wakefield's examination that resulted in the full-scale IQ score of 61 occurred
almost two months after plaintiff turned age 22, plaintiff was not required to produce an IQ score
prior to age 22 in order to meet Listing 12.05(C).  See Gomez v. Astrue, 695 F. Supp.2d 1049,
1061 (C.D. Cal. 2010).  Instead, plaintiff could provide evidence that she had sub-average
intellectual functioning with deficits in adaptive functioning prior to age 22.  See Kennedy, 738
F.3d at 1176.  Plaintiff argues that her valid IQ score obtained after age 22 creates a rebuttable
presumption that her impairment existed prior to the age of 22.

The Ninth Circuit Court of Appeals has not yet decided the issue whether the rebuttable
presumption plaintiff urges should exist, but several other circuits have addressed the issue and have
held that such a presumption exists.  See Hodges v. Barnhart, 276 F.3d 1265, 1268-69 (11th Cir.
2001) (IQ scores after age 22 satisfy the listing criteria and "create a rebuttable presumption of a
fairly constant IQ throughout life") (citing Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001);
Luckey v. U.S. Dept. Of Health and Human Services, 890 F.2d 666, 668 (4th Cir. 1989)).
Furthermore, many district courts within the Ninth Circuit have applied the rebuttable presumption.

1  See, e.g., Flores v. Astrue, 2013 WL 146190, at *4-*5 (C.D. Cal. Jan.11, 2013) (unpublished)

2  (collecting cases and adopting rebuttable presumption); Woods v. Astrue, 2012 WL 761720, at *3-*4

3  (E.D. Cal. March 7, 2012) (unpublished) (adopting rebuttable presumption and finding that "[a]bsent

4  some evidence of a change in cognitive ability or some other persuasive information to account for a

5  change in condition relating to the plaintiff's ability prior to age 22 and the date of the IQ testing,

6  there appears to be no factual basis for concluding that the IQ inexplicably dropped after age 22");

7  Forsythe v. Astrue, 2012 WL 217751, at *7-*9 (E.D. Cal. Jan. 24, 2012) (unpublished) (collecting

8  cases and adopting presumption); Schuler v. Astrue, 2010 WL 1443892, at *6 (C.D. Cal. Apr.7, 2010)

9  (unpublished) ("a valid qualifying IQ score obtained by the claimant after the age of 22 creates a

10  rebuttable presumption that the claimant's mental retardation began prior to the age of 22, as it is

11  presumed that IQ scores remain relatively constant during a person's lifetime."); Jackson v. Astrue,

12  2008 WL 5210668, at *6-*7 (C.D. Cal. Dec.11, 2008) (unpublished) ("several circuits have held that

13  valid IQ tests create a rebuttable presumption of a fairly constant IQ throughout a claimant's life . . .

14  The Court finds the reasoning of the Seventh, Eighth, and Eleventh Circuits to be persuasive.").  But

15  see Clark v. Astrue, 2012 WL 423635, at *5-*6 (E.D. Cal. Feb.8, 2012) (unpublished) (declining to

16  adopt rebuttable presumption, "especially in a situation where there are glaring discrepancies in the

17  IQ scores in the first place"); Rhein v. Astrue, 2010 WL 4877796, at *8 (E.D. Cal. Nov. 23, 2010)

18  (declining to adopt rebuttable presumption on grounds it would remove plaintiff's burden at Step

19  Three).

20      The undersigned has previously found those cases applying the rebuttable presumption

21  persuasive, see Vieira v. Colvin, 2013 WL 1195287, at *6-*7 (E.D. Cal. Mar. 22, 2013).

22  Furthermore, the presumption of prior impairment is especially persuasive in the context of a case

23  such as this where the claimant's IQ scores were obtained so close to the time the claimant turned

24  age 22.  Defendant does not argue that there is no rebuttable presumption.  Nor does defendant

25  argue that evidence in the record rebuts the presumption.  Accordingly, the court applies the

26  rebuttable presumption rule to find that plaintiff has satisfied the requirement in Listing 12.05(C)

27  that plaintiff's mental impairment manifested itself prior to age 22.

28  ////

1    As for the final prong of Listing 12.05(C), plaintiff argues that the ALJ erred in his

2    determination that plaintiff did not suffer from other mental impairments causing additional and

3    significant work-related limitations despite his determination that plaintiff had severe borderline

4    intellectual functioning and the existence of evidence in the record that plaintiff had a learning

5    disability and dysthymic disorder.

6    "An impairment imposes a significant work-related limitation of function when its effect

7    on a claimant's ability to perform basic work activities is more than slight or minimal."  Fanning

8    v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987).  "A finding of a severe impairment at the Second

9    Step is a per se finding of an 'impairment imposing additional and significant work-related

10   limitations of function' as defined in Listing 112.05."  Washington v. Colvin, 2013 WL 4517911,

11   at *8 (E.D. Cal. Aug. 26, 2013) (citing Fanning, 827 F.2d at 633).  Furthermore, the Ninth Circuit

12   Court of Appeals has indicated that an additional impairment need not even reach the "severe"

13   limit in order for a claimant to satisfy the final requirement of Listing 12.05(C).  Fanning, 827

14   F.2d at 633, n.3 ("We emphasize, however, that a finding of severity is not required to satisfy the

15   more than slight or minimal effect standard."); see also Edwards by Edwards, 755 F.2d at 1515

16   (holding that "significant" work-related limitation of function involves something more than

17   "minimal" but less than "severe").

18   As an initial matter, the court notes that the sole severe impairment determined by the ALJ

19   at Step Two, borderline intellectual functioning, does not constitute an "other mental impairment

20   causing an additional and significant work-related limitation" for purposes of the final

21   requirement of Listing 12.05(C).  Lawson v. Astrue, 2010 WL 961722, at *3 (E.D. Cal. Mar. 16,

22   2010) (citing Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987) ("[I]n this circuit, a person

23   who has a severe physical or other mental impairment, as defined at step two of the disability

24   analysis, *apart from the decreased intellectual function*, meets the second prong of the § 12.05(C)

25   listing.") (emphasis added); see also Pullen v. Bowen, 820 F.2d 105, 109 (4th Cir. 1987); Cook v.

26   Bowen, 797 F.2d 687, 690 (8th Cir. 1986); Nieves v. Secretary of Health and Human Services,

27   775 F.2d 12, 14 (1st Cir. 1985).  Accordingly, to the extent that plaintiff argues that she met the

28   final requirement based on the fact the ALJ found this impairment to be severe for purposes of

9

1   Step Two, her argument is unpersuasive.

2       Plaintiff further argues that the ALJ erred in his determination that plaintiff's other mental

3   impairments, namely a learning impairment involving communication difficulties and dysthymic

4   disorder, were not sufficiently severe to warrant a finding that plaintiff met or equaled Listing

5   12.05(C).  Plaintiff's argument is not well taken because the ALJ's determination that these

6   impairments were not severe enough to meet the "other" impairment requirement was supported

7   by substantial evidence in the record.

8       With respect to plaintiff's claim that she suffered from a severe learning disability, the

9   ALJ noted that "[w]hile there is prior evidence of a learning disability, there is no evidence that

10  this is an active medically determined impairment."  (AT 15.)  Indeed, none of plaintiff's medical

11  records from the relevant period note or otherwise indicate that plaintiff has a learning disability

12  beyond borderline intellectual functioning.  Both examining physicians, Dr. Torrez and Dr.

13  Wakefield, diagnosed plaintiff with borderline intellectual functioning, and Dr. Torrez also

14  diagnosed plaintiff with dysthymic disorder and nicotine dependence.  (AT 211, 247.)  However,

15  neither physician diagnosed plaintiff with a learning disability.  (AT 207, 243.)  Furthermore, Dr.

16  Torrez noted that plaintiff "does not appear to be suffering from a major mental disorder at this

17  time" and Dr. Wakefield opined that plaintiff did "not appear to have an organic mental disorder."

18  (AT 212, 246.)  A non-examining physician reviewed plaintiff's medical records on April 11,

19  2011, and also did not mention the existence of a learning disability beyond plaintiff's own

20  allegations.  (AT 221.)

21      While plaintiff provided educational records from prior to the alleged disability period

22  indicating that she was determined to have a learning disability by her school and placed in

23  special education classes, the ALJ properly discounted these sources.  The ALJ noted that the

24  most recent of the school records were developed at least two years prior to the alleged onset

25  date, and that the opinion of Kathy Decker, the school psychologist who initially examined

26  plaintiff for a learning disability and diagnosed her with one, was based on tests administered in

27  2001, nearly a decade before plaintiff's alleged onset date.  (AT 17.)  The ALJ further noted that

28  the majority of cognitive testing that plaintiff underwent during her time in school occurred more

1    than five years prior to the alleged onset date.  (Id.)  Ultimately, the ALJ assigned little weight to

2    these records because they were developed years before the alleged onset date and conflicted with

3    the findings of plaintiff's examining physicians that were developed during the relevant period.

4    (AT 17-18.)  These were valid reasons for discounting this evidence that was supported by

5    substantial evidence in the record.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)

6    ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a

7    nontreating source is based on independent clinical findings that differ from those of the treating

8    physician, the opinion of the nontreating source may itself be substantial evidence; it is then

9    solely the province of the ALJ to resolve the conflict."); Thomas v. Barnhart, 278 F.3d 947, 957

10   (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as

11   substantial evidence when the opinions are consistent with independent clinical findings or other

12   evidence in the record."); Dwyer v. Astrue, 800 F. Supp. 2d 542, 549 (S.D.N.Y. 2011) (finding

13   that the ALJ properly rejected an examining physician's report based in part on the fact that it was

14   developed over a year prior to the plaintiff's alleged disability onset date because the remoteness

15   of the report made it the "least relevant of the reports in the Record").  Accordingly, the ALJ's

16   determination that plaintiff did not have a learning disability that imposed an additional and

17   significant work-related limitation of function was supported by substantial evidence in the

18   record.

19          With respect to plaintiff's claim that her diagnosis of dysthymic disorder constituted an

20   "other" impairment for purposes of Listing 12.05(C), the ALJ acknowledged that plaintiff had

21   been diagnosed with dysthymic disorder, but that "this [impairment] was classified as mild and

22   [plaintiff] has not received any treatment for any mood disorder."  (AT 15.)  The ALJ noted this

23   impairment was "non-severe."  (Id.)  The court finds that this conclusion was supported by

24   substantial evidence in the record.

25          Dr. Torrez, the examining psychologist who diagnosed plaintiff with dysthymic disorder,

26   opined that plaintiff's ability to perform various work related activities such as following

27   instructions, maintaining concentration and attention, interacting with coworkers, and completing

28   a normal workday and workweek without interruptions ranged from "fair" to "good."  (AT 212.)

11

1    Dr. Torrez also gave plaintiff a Global Assessment of Functioning ("GAF") score of 60,

2    indicating that plaintiff had moderate symptoms or difficulty in social, occupational, or school

3    functioning. (AT 211.) Dr. Torrez further opined that plaintiff's symptom severity "is considered

4    to be within the mild range," and noted that "[t]he likelihood of [plaintiff's] mental condition

5    improving in the next 12 months is fair." (AT 212.)

6          The ALJ afforded only "moderate weight" to Dr. Torrez's opinion because her opinion

7    with respect to the diagnosis of dysthymic disorder was based on minimal objective findings that

8    were not found in later opinions and because she did not define what she meant by plaintiff

9    having "fair" ability with respect to some workplace functions. (AT 19.) Nevertheless, the ALJ

10   interpreted her findings to mean that plaintiff's "symptom severity was in the mild range." (Id.)

11   There is substantial support in the record for this interpretation of Dr. Torrez's findings because

12   Dr. Wakefield examined plaintiff after Dr. Torrez, did not diagnose plaintiff with dysthymic

13   disorder, noted that plaintiff's mood was "normal," and gave plaintiff a GAF score of 65, which

14   indicated that plaintiff had only mild symptoms or some difficulty in social, occupational, or

15   school functioning. (AT 244, 247.) Furthermore, as noted by the ALJ, there is no evidence in the

16   record that plaintiff underwent treatment for any mood disorder. While plaintiff correctly asserts

17   that the medical evidence in the record indicating that plaintiff's diagnosed dysthymic disorder

18   had a mild-to-moderate impact could support a determination that plaintiff met the last

19   requirement to be found disabled under Listing 12.05(C), substantial evidence supported the

20   ALJ's determination that this impairment did not rise to the level of severity to meet the listing.

21   Accordingly, the court is required to uphold the ALJ's conclusion. Burch v. Barnhart, 400 F.3d

22   676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation,

23   it is the ALJ's conclusion that must be upheld.").

24         For the foregoing reasons, substantial evidence supported the ALJ's determination that

25   plaintiff did not have an additional impairment imposing significant work-related limitations.

26   Accordingly, the ALJ did not err in finding that plaintiff did not meet the criteria set forth in

27   Listing 12.05(C).

28   ////

12

1   V.      CONCLUSION

2           For the foregoing reasons, IT IS HEREBY ORDERED that:

3           1.  Plaintiff's motion for summary judgment (ECF No. 16) is DENIED.

4           2.  The Commissioner's cross-motion for summary judgment (ECF No. 19) is

5   GRANTED.

6           3.  Judgment is entered for the Commissioner.

7           4.  The Clerk of Court is directed to close this case and vacate all dates.

8           IT IS SO ORDERED.

9   Dated:  March 2, 2015

10

11                                                  _____
                                                    KENDALL J. NEWMAN
12                                                  UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28